Filed 10/27/22  Towell v. O'Gara Coach Co. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| SELENA TOWELL,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>O'GARA COACH COMPANY, LLC et al.,<br><br>    Defendants and Appellants. | B310742<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV45961) |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Kolar & Associates, Elizabeth L. Kolar and Benjamin T. Runge for Defendants and Appellants.

Berenji Law Firm, Shadie L. Berenji and Kristopher N. Tayyeb for Plaintiffs and Respondents.

————————————

Before plaintiff and respondent Selena Towell began working at a car dealership owned by defendant and appellant Westlake Coach Company, LLC (Westlake), an affiliate of defendant and appellant O'Gara Coach Company, LLC (O'Gara), she digitally signed an employment application that contained a clause requiring her to pursue any claims against defendants in individual arbitration. Two days later, Towell signed an at-will employment agreement in which Westlake offered her an option to opt out of a waiver of her right to pursue class actions in court. Towell checked the box indicating that she opted out of the class action waiver. Two weeks after that, on her first day on the job, Towell physically signed the employment application, certifying that she was the person who submitted the application in the first place.

Towell subsequently filed a class-action complaint against defendants, and the question in this case is which of the two documents she signed controls. The trial court concluded that the opt-out provision in the at-will employment agreement superseded the arbitration agreement in the employment application, and on that basis denied defendants' motion to compel arbitration. Defendants contend this was error, but we disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

Because this case revolves almost entirely around the interpretation of the two documents Towell signed, we quote them at length.

A.     *The Employment Application*

The first document is titled "Application for Employment." On the first four pages of the document, Towell entered the

2

information typical of an employment application, such as her name and address, the position she was applying for (new car sales), and her employment history, in the spaces provided on the form.

The fifth page of the document is titled "Applicant Statement and Agreement" and consists of several paragraphs of very small text,[1] with a space for Towell to sign at the bottom. Near the top of the page is a paragraph reading, "The Company and Employee (hereinafter collectively referred to as the 'Parties') hereby agree to use a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context.  Because of the mutual benefits . . . which private binding arbitration can provide both the Company and Employee, Employee and the Company both agree that any claim, dispute, and/or controversy arising from, or relating in any way to, Employee's employment relationship or application or consideration for employment with the company . . . shall be submitted to, and shall be resolved through, final and binding arbitration before an arbitrator selected in accordance with the procedures of the arbitration service selected by the party against whom the claim is brought . . . .  This agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.) ('FAA') and to the extent not inconsistent with the FAA, the

---

[1] The trial court concluded that the font size was less than seven points, and found Towell's estimate of 5.5 points "plausible."  The copy of the document in the appellate record appears to have been shrunk down somewhat from its original size, but even if it were increased to full size, the text of the arbitration provisions would be very small.

procedures set forth in the California Code of Civil Procedure [section] 1280[ ] et seq."

The next paragraph provides that, "[i]n order to provide for the efficient and timely adjudication of claims, the Parties agree that the arbitrator is prohibited from consolidating the claims of others into one proceeding, and thus, the arbitrator will hear only the Employee's individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding. Thus, the Company has the right to defeat any attempt by me to file or join other employees in a class, collective, or joint action lawsuit or arbitration (collectively 'class claims')."

Below this paragraph, the document states, in all capital letters: "THE COMPANY AND EMPLOYEE HEREBY WAIVE ANY RIGHT ANY OF US MAY HAVE TO A JURY TRIAL OF ANY CLAIM OR CONTROVERSY COVERED BY THIS AGREEMENT." Then, further down the page, another all-caps warning: "WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD TAKE CARE TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS— INCLUDING BUT NOT LIMITED TO AN ATTORNEY— REGARDING THE CONSEQUENCES OF YOUR DECISION . . . ."

Finally, near the bottom of the page, a last warning in all capital letters: "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT."

Beneath this warning appears Towell's electronic signature dated July 6, 2018. Immediately below the electronic signature is another statement: "I hereby certify that this application was

previously submitted by me online and that the information is accurate," followed by Towell's signature and the date, July 18, 2018.

**B.** *The At-will Employment Agreement*

The second document is titled "At-Will Employment and Arbitration Agreement." It begins by defining Towell's employment as at-will and subject to termination at any time by either party. It then includes several paragraphs similar to those quoted above in the employment application requiring the parties to resolve their claims in arbitration rather than in court. Paragraph 4 of the document states, "Unless I have exercised my right to opt out of the terms of this Paragraph as provided for herein, I agree that any claim brought under this binding arbitration Agreement shall be brought in the individual capacity of myself or the Dealership. This binding arbitration Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class or collective action. No arbitrator shall have the authority under this agreement to order any such class or collective action. Any dispute regarding the scope or enforceability of this Agreement shall be resolved by a court, not by the arbitrator. By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring or participate in an action brought on a class or collective basis. . . ."

The following paragraph, however, allows the employee to opt out of the arbitration requirement in cases involving class claims. It states, "Due to the nature of the Class-Collective Action Waiver set forth in paragraph 4 above, the Dealership has

provided me with the ability to opt out of the Class-Collective Action Waiver. Accordingly, I acknowledge and understand that my agreement to waive the right to pursue or participate in the consolidation or joinder of other claims or controversies involving any other employees or parties, or have such claims or controversies proceed on a class or collective action, is voluntary and that execution of this document is not a condition of employment. I understand that I may elect to opt out of the Class-Collective Action Waiver and retain any right I may have to bring an action in court and bring an action on a class or collective basis by checking this box." A checkmark appears in the box immediately following.

Towell signed the document and dated it July 8, 2018.

## C. *Lawsuit and Motion to Compel Arbitration*

On December 23, 2019, Towell filed a class action complaint against O'Gara, alleging several violations of employment law. Towell claimed that she worked on behalf of O'Gara as a lease retention manager at a car dealership in Thousand Oaks from approximately July 18, 2018 to December 18, 2018. Towell was paid on a commission basis for selling cars, and she alleged that O'Gara failed to pay at least the minimum wage, and failed to pay for required non-commission work, among other claims. She later amended the complaint to include Westlake, the O'Gara affiliate that owned the dealership where she had worked.[2]

---

[2] The record does not establish the exact relationship between O'Gara and Westlake. Defendants' brief states that "O'Gara is an affiliate of Westlake in that they indirectly, th[r]ough one or more intermediaries, share common control."

6

On November 16, 2020, defendants filed a motion to compel arbitration, alleging that by signing the employment application, Towell agreed to address all disputes regarding her employment in individual arbitration. Towell opposed the motion on the ground that the opt-out provision in the at-will employment agreement superseded the employment application. In the alternative, she argued that the arbitration agreement in the employment application was unenforceable because it was procedurally and substantively unconscionable. Finally, Towell argued that any arbitration agreement was unenforceable to the extent that Towell's claims fell within Labor Code section 229, which bars the enforcement of arbitration agreements in cases seeking the recovery of unpaid wages.

The trial court denied the motion, finding that Towell's decision to opt out of the class action waiver was controlling. The court did not reach the issues of unconscionability or Labor Code section 229. Defendants filed a timely notice of appeal of the trial court's order denying the motion.

## DISCUSSION

"Arbitration agreements are 'valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.) 'California law, like federal law, favors enforcement of valid arbitration agreements.' "

---

The employment application listed Towell's employer as "O'Gara Coach – Westlake," and the at-will employment agreement identified Westlake as the employer. This opinion addresses only the question of whether Towell agreed to arbitrate her claims, and we need not and do not decide which defendant is potentially liable to Towell under any theory.

7

(*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 721.)  The denial of a motion to compel arbitration is an appealable order (Code Civ. Proc., § 1294, subd. (a)), and " ' " 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law.' " ' " (*Baxter*, *supra*, at p. 722.)

Defendants argue that if we apply the general principles of contract law, we must conclude that there is a binding arbitration agreement between the parties.  In particular, defendants point to the rule that "[i]n the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there.  [Citation.] If the terms are unambiguous, there is ordinarily no occasion for additional evidence of the parties' subjective intent." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027.)  On July 18, 2018, Towell signed the employment application, which included a provision stating that "[t]his agreement is the entire agreement between the Company and the employee regarding the rights of the Company or employee to terminate employment with or without good cause and this agreement takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and the Company."  Thus, according to defendants, Towell's signature created a new contract that voided all prior contracts with defendants, including the at-will employment agreement in which Towell opted out of the waiver of her right to file a class-action employment claim.  (See *Thiele v. Merrill Lynch, Pierce, Fenner & Smith* (S.D.Cal. 1999) 59 F.Supp.2d 1060, 1064 ["In California, a subsequent written contract alters the terms of a previous contract"].)

8

If the July 18 "wet-ink" signature were the only signature on the at-will employment agreement, defendants' argument might be persuasive. But when Towell was presented with the employment application as she began work at the car dealership on July 18, her electronic signature was already present on the document, along with the date she first signed it, July 6, 2018. Below that first signature was the statement, "I hereby certify that this application was previously submitted by me online and that the information is accurate." Below that single line, Towell signed the document a second time.

In this context, it is not at all clear that Towell's July 18 signature served to create a new contract and supersede all prior agreements. Towell proposes another plausible interpretation: that the purpose of signing the document a second time was merely to authenticate her original electronic signature. (See, e.g., *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 [motion to compel arbitration denied because the defendant failed to prove authenticity of the plaintiff's electronic signature].)

We find Towell's interpretation of the July 18 signature more persuasive than defendants' interpretation. First, it is consistent with the statement immediately above the second signature, "I hereby certify that this application was previously submitted by me online and that the information is accurate." Second, as the trial court noted, the text pertaining to a waiver of class-action claims was printed in very small type and interspersed among several other provisions on the page above the signatures, with no place for Towell to sign her initials to indicate that she agreed to waive her class-action rights. If the parties meant for Towell's second signature to void the opt-out

9

clause that she had signed merely 10 days earlier, we would expect that intention to be stated clearly and unequivocally.[3]

Another consideration supporting Towell's interpretation is the principle that, if the meaning of a standardized contract cannot be resolved through other means, it must be construed against the drafter. (Civ. Code, § 1654; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 798.) Defendants prepared both of the contracts in this case and controlled the sequence in which Towell signed them. According to a declaration from a human resources employee who worked on behalf of Westlake, Towell's experience was consistent with Westlake's standard procedures. If defendants' interpretation of the documents were correct, it would mean that defendants' policy was to offer their new employees an opportunity to opt out of waiving their class-action rights, but then to require the employees to void that waiver when they began work and signed the employment application for a second time. This is an absurd outcome. Defendants had the ability to design their employment contracts as they wished. If they did not mean for employees like Towell to have the right

---

[3] Defendants object to the trial court's reasoning, claiming that there is no legal authority establishing a minimum text size or requirement to sign one's initials in order to establish a valid arbitration agreement. This misses the point. The question is not whether the employment application created a valid arbitration agreement in the first place, but whether Towell's second signature on the document should be interpreted as voiding her subsequent decision to opt out. In these circumstances, the size of the text and the lack of initials are a reasonable factor in determining the meaning of Towell's second signature.

to opt out of the class-action waiver, they could have declined to offer the option in the first place.

In the absence of a clear indication to the contrary, we will not interpret Towell's second signature on the employment application as a decision to surrender an option defendants had explicitly offered her merely 10 days earlier. By opting out of the class action waiver, Towell retained her right to file a class action suit. There is no agreement between the parties to arbitrate Towell's class-action claims, and the trial court did not err by denying defendants' motion.

## DISPOSITION

The trial court's order is affirmed. Towell is awarded her costs on appeal.

NOT TO BE PUBLISHED

BENKE, J.*

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.